UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TRITON RENOVATION, INC.,

    Plaintiff,

v.                                                        Case No. 2:20-cv-432-JLB-NPM

EMPIRE INDEMNITY INSURANCE
COMPANY,

    Defendant.
_____

# ORDER

        Currently before the Court in this Hurricane-Irma-insurance-coverage dispute are Plaintiff Triton Renovation, Inc.'s Motion to Compel Appraisal and Stay Discovery (Doc. 29), its related Motion to Stay Discovery Until Court Ruling on Appraisal (Doc. 43), and Defendant Empire Indemnity Insurance Company's Motion to Compel Expert Depositions (Doc. 45). For the reasons set forth below, the motion to compel appraisal and stay discovery is granted in part and denied in part, the motion to stay discovery is denied as moot both because the Court previously stayed all discovery and because the parties have agreed to the scope of discovery going forward, and the motion to compel expert depositions is also denied as moot because the parties have resolved that issue by agreement.

**Factual and Procedural Background**

On September 10, 2017, Hurricane Irma struck Naples, Florida, and inflicted substantial property damage to Empire's insured, St. Croix at Pelican Marsh Condominium Association. (Doc. 20, ¶ 7; Doc. 34, p. 1). At the time, St. Croix's insurance policy with Empire provided at least $36 million of coverage for fifteen condominium buildings and ten parking garages (Doc. 20-1, pp. 10-12, 17-21; *see also* Doc. 34-1 (representing the total amount of insurance as $44,780,850)). St. Croix promptly made a claim against the policy on September 14, 2017, and, on January 24, 2019, assigned its rights to proceeds due under the policy as well as any rights for "extra contractual damages" such as fees, costs and expert expenses to Triton. (Docs. 20-2; 29, p. 2).

With no dispute that Hurricane Irma was a covered peril and that it caused at least some covered losses, Empire investigated the claim and paid more than $2 million in benefits. (Docs. 29, p. 2; 34, pp. 1, 3). Disagreeing with Empire's valuation of the loss, St. Croix submitted to Empire a February 12, 2019 Sworn Statement in Proof of Loss claiming $6,799,120.85 as the full cost of repair or replacement. (Doc. 34-1). St. Croix in 2019 and Triton in 2020 also invoked the insured's unilateral right under the policy to have this amount-of-loss dispute referred to an appraisal panel for resolution. (Doc. 29-3). And meanwhile, Triton engaged various subcontractors and completed the repairs. (Doc. 34-2, p. 2).

One year after the insured's submission of its sworn proof of loss, Empire conducted its examination under oath of Triton as the insured's assignee on February 7, 2020. (Doc. 34-2, p. 1). In response to the testimony of the designees about potential records and other documents, Empire made follow-up requests for the production of information, and Triton produced additional documents in response. *Id*.

With still no movement by Empire toward assembling the appraisal panel,[1] Triton initiated a civil action on May 22, 2020, in state court against Empire by filing a Petition to Compel Appraisal, which sought an order appointing an umpire and requiring Empire to name its appraiser. (Doc. 4). On June 18, 2020, Empire removed the action to this Court and filed a motion to dismiss the petition. (Docs. 1, 3). The motion to dismiss argued that the petition constituted an "improperly and insufficiently pled action for mandatory injunctive relief," and that "it should be dismissed in its entirety for failure to state a proper action for declaratory judgment." (Doc. 3, p. 5).

---

[1] Utilizing often seen language, the appraisal provision of the policy provides: "If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will: (a) Pay its chosen appraiser; and (b) Bear the other expenses of the appraisal and the umpire equally. If there is an appraisal, we will still retain our right to deny the claim." (Doc. 20-1, p. 39).

In response, Triton agreed to amend its pleading (Doc. 12), and it filed a two-count Amended Complaint. Count I advanced a breach-of-contract claim based on Empire's alleged failures to comply with the appraisal provision and to pay all insurance proceeds for the covered damages. (Doc. 20, ¶¶ 19-20). And Count II continued to advance Triton's petition to compel appraisal. (Doc. 20, ¶¶ 23-34). In its overall prayer for relief for both counts, Triton requested an order to facilitate the appraisal process, or in the alternative, a monetary judgment. (Doc. 20, pp. 5-6).

Empire reasserted its previously advanced arguments for the dismissal of the petition-to-compel-appraisal claim (Doc. 22), and in response, Triton moved for leave to amend to recast its petition to compel appraisal as a claim for declaratory judgment[2] that Triton "is entitled to the resolution of the insurance claim via binding appraisal proceedings in accordance with the Policy" and other related declarations.[3] (Docs. 25; 25-1, p. 6).

---

[2] The proposed declaratory-judgment count was based on Florida and not federal law. "However, Florida's Declaratory Judgment Act, found in Chapter 86 of the Florida Statutes, is a procedural mechanism that confers subject matter jurisdiction on Florida's circuit and county courts; it does not confer any substantive rights." *Coccaro v. Geico Gen. Ins. Co.*, 648 F. App'x 876, 880-81 (11th Cir. 2016) (citing *Garden Aire Vill. S. Condo. Ass'n Inc. v. QBE Ins. Corp.*, 774 F. Supp. 2d 1224, 1227 (S.D. Fla. 2011); *Nirvana Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 589 F. Supp. 2d 1336, 1343 n.1 (S.D. Fla. 2008); *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1138 n.3 (11th Cir. 2005) ("There is little doubt ... that the district court had to apply the [federal] Declaratory Judgment Act, rather than the state declaratory judgment act, in this action." (citation omitted))). "Because the Florida Declaratory Judgment Act is procedural as opposed to substantive," it would have been improper to grant Triton leave to pursue declaratory relief from this Court under Florida's act. *Id*.

[3] The proposed Second Amended Complaint continued to advance the breach-of-contract claim asserted in the first amended complaint.

With the state of the pleadings in flux, Triton filed a motion for extension of time to serve its expert reports (Doc. 27), and its motion to compel appraisal and stay discovery. (Doc. 29). A scheduling order setting expert-disclosure deadlines had not yet been entered, and so the motion for more time to serve expert reports was denied as moot. (Doc. 32). But the Court conducted a conference with the parties to ascertain their positions related to whether any formal discovery should continue to proceed if the amount-of-loss question was referred to an appraisal panel. Triton reported that it would be able to serve its expert disclosures by October 30, 2020, and it indicated no objection to Empire conducting non-party discovery. Empire explained that it would want to continue to conduct discovery to inform the appraisal process. Accordingly, the Court entered a Case Management and Scheduling Order providing for the disclosure of expert reports and other deadlines, including a discovery cutoff of February 24, 2021. (Doc. 33).

Nevertheless, Triton resisted scheduling expert witness depositions until the Court ruled on whether the amount-of-loss question would be referred to an appraisal panel. In part, Triton was motivated by a concern that taking any expert-witness depositions could potentially be construed as a waiver of its right to appraisal. (Doc. 43, ¶¶ 10-15). On the other hand, and mindful of the discovery cutoff, Empire moved to compel the depositions of Triton's experts. (Doc. 45).

At this juncture, there was a change in counsel for Triton. (Docs. 46, 53, 58), and its new attorney requested a status conference (Doc. 49). Granting the motion, the Court vacated the CMSO and held a status conference on March 3, 2021. (Docs. 51, 55). The discussion during the conference primarily concerned whether the parties could resolve Empire's objection that appraisal was not ripe due to its outstanding document requests. By Empire's account, it had corresponded with Triton's former counsel in June and August of 2020 seeking documents mentioned during the examinations under oath and it had yet to receive a complete response. (*See*, *e.g.*, Doc. 34-2). Triton agreed to produce all responsive documents in its possession within thirty days, and Empire agreed that within thirty days of receipt, it would confer with Triton about any remaining issues. On April 1, 2021, Triton filed a notice of compliance. (Doc. 60).

The Court conducted another status conference on May 3, 2021, during which it learned that Triton had produced nearly 2,000 pages of additional documents and that in the thirty days since, Triton had not heard anything from Empire about any purported deficiencies. Apparently, the widow of a now-deceased construction supervisor for Triton had disposed of some records that may have been responsive, but Triton had otherwise produced everything it could in response to Empire's requests. With no dispute that Hurricane Irma was a covered peril that caused at least some amount of covered loss; with a disagreement between the parties as to the

amount of loss—both in the difference between Triton's sworn proof of loss statement and Empire's payments on the claim, and in the difference between the amount-of-loss opinions contained in the parties' expert disclosures; and with Triton's apparently reasonable compliance with its post-loss duties, Triton's request to refer the amount-of-loss dispute to an appraisal panel pursuant to the policy seemed entirely ripe.

So, the discussion during the status conference turned next to whether the parties could resolve any purported deficiencies in Triton's pleading—as a matter of both stating a valid cause of action and providing an appropriate vehicle for referring the amount-of-loss question to an appraisal panel. The parties reviewed Triton's (first) amended complaint (Doc. 20) during the conference. Triton offered to withdraw the second count labeled "Petition to Compel Appraisal," and Empire agreed that the first count for breach of contract stated a cause of action and that the absence of any other theory of recovery, such as a claim for declaratory or other equitable relief, did not serve as any impediment to referring the amount-of-loss question to appraisal.[4] Accordingly, Triton subsequently filed a Notice of Withdrawal of Count II (Doc. 64), the Court denied as moot both Empire's motion

---

[4] *See Castillo At Tiburon Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-cv-468-SPC-MRM, 2020 WL 7587181, *2 (M.D. Fla. Dec. 22, 2020) (rejecting as both "a nonstarter and nonsensical" Empire's argument that an insurance policy's appraisal provision can only be enforced by way of a claim for equitable relief).

to dismiss Count II and Triton's motion for leave to file a second amended complaint (Doc. 65), and Empire answered the one count for breach of contract in the amended complaint (Doc. 67).

The parties also agreed during the May 3, 2021 conference to exchange discovery that would inform the appraisal process. For example, they agreed that both sides would be able to depose any experts who offered opinions for the appraisal panel to consider. And they agreed that neither party would utilize an appraiser whose compensation might be contingent in any way on the outcome of this matter. *See Landmark Am. Ins. Co. v. H. Anton Richardt, DDS, PA*, No. 2:18-cv-600-FtM-29UAM, 2019 WL 2462865, *3 (M.D. Fla. June 13, 2019) (Steele, J.) (disqualifying public adjuster from acting as appraiser because his compensation was on a contingency fee basis).[5]

**Analysis**

"Appraisal is a form of alternative dispute resolution that sets a disputed loss amount." *CMR Constr. & Roofing, LLC v. Empire Indem. Ins. Co.*, 843 F. App'x 189, 193 (11th Cir. 2021) (citing *State Farm Fla. Ins. Co. v. Crispin*, 290 So. 3d 150, 151 (Fla. 5th DCA 2020)); *see also Merrick Preserve Condo. Ass'n, Inc. v. Cypress Prop. & Cas. Ins. Co.*, No. 4D20-1419, 2021 WL 1206394, *3 (Fla. 4th DCA Mar.

---

[5] Nor may the parties' adjusters serve as appraisers. *See State Farm Fla. Ins. Co. v. Parrish*, 312 So. 3d 145, 150-151 (Fla. 2d DCA 2021).

31, 2021) ("Appraisal clauses provide a mechanism for prompt resolution of claims …."). Thus, like an arbitration agreement, an appraisal provision is a stipulation to the forum in which certain areas of dispute should be decided. *See Webb Roofing & Constr., LLC v. Fednat Ins.*, No. 2D20-1881, 2021 WL 1277974, *2 (Fla. 2d DCA Apr. 7, 2021); *accord Fla. Ins. Guar. Ass'n v. Castilla*, 18 So. 3d 703, 704 (Fla. 4th DCA 2009) (reasoning that motions to compel appraisal or arbitration are subject to the same standard of review).

"The appraisers determine the amount of the loss, which includes calculating the cost of repair or replacement of property damaged, and ascertaining how much of the damage was caused by a covered peril as opposed to things such as 'normal wear and tear, dry rot, or various other designated, excluded causes.'" *Citizens Prop. Ins. Corp. v. River Manor Condo. Ass'n*, 125 So. 3d 846, 854 (Fla. 4th DCA 2013) (quoting *Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021, 1025 (Fla. 2002)). "Conversely, the court decides whether the policy provides coverage for the peril." *Merrick Preserve*, 2021 WL 1206394, at *3 (citing *River Manor*, 125 So. 3d at 854).

Given the "overwhelming preference in Florida for the resolution of conflicts through any extra-judicial means … for which the parties have themselves contracted," resort to the appraisal process is strongly preferred. *McGowan v. First Acceptance Ins. Co.*, Inc., 411 F. Supp. 3d 1293, 1296 (M.D. Fla. 2019) (quoting *State Farm Fire & Cas. Co. v. Middleton*, 648 So. 2d 1200, 1201-1202 (Fla. 3d DCA

1995)); *see also Preferred Mut. Ins. Co. v. Martinez*, 643 So. 2d 1101, 1103 (Fla. 3d DCA 1994) (reversing denial of motion to compel appraisal because such motions "should be granted" whenever the insurance policy includes an appraisal provision). Indeed, when an insurance policy contains an appraisal provision, "the right to appraisal is not permissive but is instead mandatory, so once a demand for appraisal is made, 'neither party has the right to deny that demand.'" *McGowan*, 411 F. Supp. 3d at 1296 (quoting *United Cmty. Ins. Co. v. Lewis*, 642 So. 2d 59, 60 (Fla. 3d DCA 1994)). And so, legions of Florida cases regularly compel appraisals by interlocutory order whenever a party properly invokes the right. *See, e.g.*, *Webb Roofing*, 2021 WL 1277974 (affirming interlocutory order granting insurer's motion to compel appraisal in breach-of-contract suit brought by insured's assignee); *State Farm Fla. Ins. v. Speed Dry, Inc.*, 292 So. 3d 1260, 1262 (Fla. 5th DCA 2020) (reversing order denying insurer's motion to compel appraisal); *State Farm Fla. Ins. Co. v. Sheppard*, 268 So. 3d 1006 (Fla. 1st DCA 2019) (same); *People's Tr. Ins. Co. v. Garcia*, 263 So. 3d 231 (Fla. 3d DCA 2019) (same).[6]

Furthermore, "when [an] insurer admits that there is a covered loss, any dispute on the amount of loss suffered is appropriate for appraisal." *McGowan*, 411

---

[6] *See also PB Property Holdings, LLC v. Auto-Owners Insurance Co.*, No. 16-cv-1748-WJM-STV, 2017 WL 7726696, *1 (D. Colo. January 26, 2017) (holding that a magistrate judge's order compelling appraisal is non-dispositive and, therefore, any objections are subject to Federal Rule of Civil Procedure 72(a)).

F. Supp. 3d at 1297 (quoting *Cincinnati Ins. Co. v. Cannon Ranch Partners, Inc.*, 162 So. 3d 140, 143 (Fla. 2d DCA 2014)). "Thus, where, as here, 'coverage [is] admitted and the only remaining dispute is the amount of the loss ... appraisal is appropriate.'" *Id*. (quoting *Gonzalez v. Am. Sec. Ins. Co.*, 2015 WL 12852303, *3-4 (M.D. Fla. Nov. 10, 2015)).

While appraisal provisions like the one at issue here do not expressly condition either party's unilateral right to invoke the appraisal process on any amount of compliance with the insured's post-loss duties (such as supplying a sworn proof of loss upon request and permitting the insurer to inspect the property), the parties agree that Florida's courts, at least in some circumstances, have constructively conditioned an insured's right to invoke appraisal on substantial compliance with the policy's post-loss duties. Assuming the post-loss duties are constructive conditions precedent to appraisal, an insured may remedy any unfilled post-loss obligations after filing suit. As the court reasoned in *Scottsdale Ins. Co. v. Univ. at 107th Ave., Inc.*, 827 So. 2d 1016 (Fla. 3d DCA 2002), "the nature of the post-loss obligations is merely to provide the insurer with an independent means by which to determine the amount of loss, as opposed to relying solely on the representations of the insured." (quoting *United States Fid. & Guar. Co. v. Romay*, 744 So. 2d 467, 471 n.4 (Fla. 3d DCA 1999)). And so if an insured provides whatever the insurer might have wanted "post-loss and pre-suit" during the course of the suit,

11

such as through discovery, then a trial court commits no error when it orders the insurer to "submit to an appraisal." *Id*. at 1016-1017.

Here, having previously inspected the property and conducted examinations under oath concerning the insured's sworn proof of loss, the only remaining cooperation that Empire sought from Triton in furtherance of the claim investigation was the production of certain documents referenced during the examinations under oath. Triton produced nearly 2,000 pages of additional documents, and despite having thirty days to do so, Empire did not note any deficiencies. The Court therefore finds that Triton reasonably complied with its post-loss duties and that its demand for an appraisal is ripe.[7]

But a lump-sum appraisal award presenting nothing more than a single figure for the entire 25-building condominium complex would not be appropriate. "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto." Fla. Stat. § 627.419(1). *See also Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000) (reasoning that each clause in an insurance policy must be read in conjunction with the entire

---

[7] Notably, it does not appear that this production was necessary for Empire to formulate an opinion as to the amount of loss because it was able to serve its expert reports concerning the amount of loss without it, and when seeking additional time to serve its reports, Empire made no mention of the need for this supplemental production. (Doc. 40).

12

policy); *Shaw v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 605 F.3d 1250, 1252 (11th Cir. 2010) ("in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect") (quoting *Anderson*, 756 So. 2d at 34). Thus, the appraisal award must be stated in terms that coincide with the contours of the policy. Here, that means it must present the replacement cost, actual cash value, ordinance or law, debris removal, and other benefit figures for each building, and account for the per-building deductibles.

Accordingly, Triton's Motion to Compel Appraisal and Stay Discovery (Doc. 29) is **GRANTED in part and DENIED in part**. The amount-of-loss issues are referred to an appraisal panel for determination, but a complete stay of all discovery is denied. Each party must select a competent and impartial appraiser by **June 18, 2021**. The appraisers may not have served as an adjuster for either party, and their compensation may not be contingent on the outcome of this matter, the outcome of the appraisal, or on any valuations they may make during the appraisal process. In other words, they may only be paid on a flat fee or hourly basis for their service as impartial appraisers. Any objections to an appraiser must be filed by **July 2, 2021**. If there are no objections to the appraisers, then the appraisers must agree to an umpire by **July 16, 2021**, and the parties will contemporaneously file a joint notice identifying the members of the appraisal panel. If the appraisers are unable to agree,

then the parties will file a motion by **July 16, 2021**, requesting a court-appointed umpire, and the motion will be set for an in-person hearing during which the parties' appraisers will explain their objections to each other's proposed umpires. The appraisal process must be completed within six months from the date the umpire is selected. The parties will therefore complete any expert-witness depositions within two months of the selection of the umpire and complete any other discovery in furtherance of the appraisal within four months of the selection of the umpire.

Triton's Motion to Stay Discovery Until Court Ruling on Appraisal (Doc. 43) and Empire's Motion to Compel Expert Depositions (Doc. 45) are **DENIED as moot**.

**ORDERED** in Fort Myers, Florida on June 4, 2021.

_Nicholas P. Mizell_
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE